UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ROBYN BEST,                                                                         **COMPLAINT**

                              Plaintiff,                         Plaintiff Demands
   -against-                                                                            Trial by Jury

NEW YORK HEALTH AND HOSPITALS
CORPORATION, and                                                            Docket No.
METROPOLITAN HOSPITAL CENTER

                              Defendants.
------------------------------------------------------------------X

Plaintiff by her attorneys, DeTOFFOL & GITTLEMAN, Attorneys at Law, upon information and belief, complains of the Defendants herein, alleging at all relevant and materials times and upon information and belief, as follows:

### Nature of The Case

Plaintiff Robyn Best complains pursuant to the False Claims Act, 31 U.S.C. § 3730(h) ("FCA") and the New York State False Claims Act, N.Y. State Fin. Law 191 ("NYFCA") and seeks damages to redress the injuries Plaintiff has suffered as a result of being retaliated against and terminated by her employer for objecting to, and making active efforts to stop, Defendants' fraudulent submissions of false claims to the government in an attempt to inflate Medicare reimbursements.

### Jurisdiction & Venue

1. Plaintiff Robyn Best ("Plaintiff" or "Ms. Best") is a resident of Queens, New York, and has a New York State Nursing license with a Bachelor's Degree in Nursing Science and a Certified Case Manager.

2. Defendant NEW YORK HEALTH AND HOSPITALS CORPORATION is an agency of

the City of New York.

3. Defendant Metropolitan Hospital Center ("Metropolitan Hospital") is a municipal hospital under the control of NEW YORK HEALTH AND HOSPITALS CORPORATION and the City of New York.

4. That at all times hereinafter mentioned, defendant NEW YORK CITY HEALTH AND HOSPITALS CORPORATION did own, maintain, operate, manage and control the hospital facility known as METROPOLITAN HOSPITAL CENTER, located at 1901 First Avenue, New York, NY 10029, and did employ the medical staff there.

5. That at all times hereinafter mentioned, defendant METROPOLITAN HOSPITAL CENTER was and still is an entity which was and still is a wholly-owned subsidiary of the co-defendant NEW YORK CITY HEALTH AND HOSPITALS CORPORATION.

6. That at all times hereinafter mentioned, defendant METROPOLITAN HOSPITAL CENTER was a hospital facility located at 1901 First Avenue, New York, NY 10029 which was owned and operated by NEW YORK CITY HEALTH AND HOSPITALS CORPORATION.

7. That at all times hereinafter mentioned, defendant METROPOLITAN HOSPITAL CENTER was and still is a medical facility which was licensed to operate as a hospital in the State of New York at 1901 First Avenue, New York, NY 10029.

8. At all relevant times, Plaintiff was employed by Defendants, having the job title Associate Director of Nursing at Metropolitan Hospital.

9. As Associate Director of Nursing, Plaintiff was responsible for establishing, evaluating, and

monitoring the case management processes, policies, and procedures to ensure appropriate hospital resource utilization, and appropriate level of care.

10. At all relevant times, Julian John was employed by Defendants, having the job title Chief Financial officer ("CFO John").

11. At all relevant times, Robert Olszewski was employed by Defendants, having the job title Director of Patient Financial Services ("Director Olszewski").

12. At all relevant times, Robert Leviton was employed by Defendants, having the job title Physician Advisor ("Dr. Leviton").

13. At all relevant times, John Pellicone was employed by Defendants, having the job title Chief Medical Officer ("CMO Pellicone").

14. This Court has jurisdiction over the subject matter of this action pursuant to both 28 U.S.C. § 1331 and 31 U.S.C. § 3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730.

15. Venue is proper in this district under 28 U.S.C. §1391(b) and otherwise based upon the fact that a substantial part of the events or omissions giving rise to the claim occurred within the Southern District of the State of New York, and Plaintiff was employed by Defendants within the Southern District of the State of New York.

**Preliminary**

16. Medicare, enacted in 1965 under Title XVIII of the Social Security Act, is a third-party reimbursement program that underwrites medical expenses of the elderly and the disabled. 42

U.S.C. §§ 1395 et seq. Medicare reimbursements are paid from the federal Supplementary Medical Insurance Trust Fund. Medicare Part A covers hospital services. Medicare Part B generally covers physician services, including medical and surgical treatment and outpatient treatment and diagnosis.

17.     Medicaid, enacted in 1965 under Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 et seq., is a medical assistance program for indigent and other needy people that is financed by joint federal and state funding and is administered by the states in accordance with federal regulations, oversight, and enforcement. Each state implements its version of Medicaid based on a State Plan that has been approved by HHS. Within broad federal regulatory and policy guidelines (see 42 C.F.R. § 430 et seq., and CMS publications), the states determine who is Medicaid-eligible, what services are covered, and how much to reimburse healthcare providers. The states, through intermediaries, also receive healthcare provider claims for program reimbursements, evaluate those claims, make payments to the healthcare providers, and present the claims to HHS/CMS for reimbursement of the federal government's share.

18.     A hospital patient's status generally falls into one of three categories: Inpatient, Outpatient, or Outpatient Observation status.

19.     Medical Providers must satisfy the evaluation and management documentation guidelines for furnishing observation status hospital care, and observation services must be patient specific and not part of the facility's standard operating procedures.

20.     The Policy Manual defined "outpatient observation services" as "a well-defined set of specific, clinically appropriate services, which include ongoing short term treatment, assessment, and reassessment before a decision can be made regarding whether patients will require further treatment as hospital inpatients or if they are able to be discharged from the hospital." Policy

Manual ch. 6, § 20.6(A). "Inpatient care rather than outpatient care is required only if the patient's medical condition, safety, or health would be significantly and directly threatened if care was provided in a less intensive setting." Quality Improvement Organization Manual Pub. 100-10, Ch. 4, § 4110.

21. Plaintiff was employed by Defendants from 1985 until her termination in 2021.

22. Plaintiff witnessed a pattern of Defendants employees improperly billing observation status, and on or about April 2021, Plaintiff informed Director Olszewski of said fraudulent billing practice.

23. Specifically, in an email sent on April 23, 2021, Plaintiff informed Director Olszewski, Dr. Leviton, and CFO John that in completing her daily responsibilities, she witnessed numerous Patients being billed for observation status for routine recovery for outpatient surgery without physician documentation substantiating the medical necessity for additional observation status.

24. Plaintiff reminded Defendants and its agents that it was fraudulent to order observation status for short-term routine recoveries related to outpatient surgeries unless there is physician documentation substantiating the medical necessity for observation status such as a post-operative clinical problem or a complication – not for routine recovery.

25. Plaintiff further explained that observation status for said cases was fraudulent because reimbursement to the Hospital for the surgical procedure already included payment for recovery and observation, and therefore additional observation status billing without exceptional circumstances would result in the hospital receiving numerous payments for a single recovery time.

26. Further, Plaintiff witnessed Defendants' employees transfer multiple patients from other

outpatient departments to observation status without physician documentation substantiating the medical necessity for observation status.

27. For example, Ms. Best witnessed patients being transferred from an outpatient psychology facility and the Emergency Department to observation status without physician documentation substantiating the medical necessity for observation status.

28. On or about April 28, 2021, Plaintiff again informed by email Director Olszewski and CFO John that Patients had been and continue to be separately billed for observation status for routine recovery of outpatient surgeries without the required physician documentation supporting such status.

29. Defendants, in response to Ms. Best's complaints, set up a meeting for May 6, 2021, to address the fraudulent billing concerns.

30. The May 6, 2021 meeting was attended by Ms. Best, CMO Pellicone, CFO John, and Dr. Leviton.

31. In the May 6, 2021 meeting, Ms. Best was informed by the attendees that the Hospital acknowledges the improper and fraudulent billing and by May 15, 2021 intends to cease the practice completely.

32. However, through the date of May 2020, Plaintiff still witnessed a pattern of Defendant employees improperly billing observation status in the manner described above.

33. On May 20, 2020, CFO John called Ms. Best to a meeting, wherein he terminated Ms. Best's employment.

34. Defendants retaliated against and wrongfully Terminated Ms. Best because she persistently raised to supervisors and physicians in Metropolitan Hospital the myriad of compliance problems (described above) surrounding decisions on whether to admit patients for observation status.

35. Plaintiff had a good faith basis, and objectively reasonable basis, for believing that she was investigating matters of current and imminent continued future fraudulent claims by Defendants.

36. A reasonable employee in the same or similar circumstances would believe, that the employer is committing fraud against the government.

37. While an actual FCA violation is not a prerequisite for a retaliation claim, the plaintiff is required to show a good faith basis, or objectively reasonable basis, for believing that he or she was investigating matters in support of a viable FCA case

38. Defendants discharged Plaintiff because of lawful acts done by Plaintiff in furtherance of efforts to stop one or more future violations of the New York False Claims Act, New York State Finance Law §187 et seq., specifically violations of New York State Finance Law §189(b) and (c).

39. After Plaintiff made numerous attempts to bring her employers into compliance with the FCA, Defendant wrongfully and abruptly terminated her. Defendants' blatant retaliation against Plaintiff for her engagement in the protected activity of investigating fraud against the Government violated 31 U.S.C. § 3730(h).

40. Ms. Best has suffered and continues to suffer economic and emotional distress, depression humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

41. Defendant's acts and omissions caused Plaintiff to feel emotionally and physically violated and agitated, for Defendant's unfair and different treatment of them apart from other employees.

42. Defendants retaliated to Plaintiff's rightful complaints by wrongfully terminating Plaintiff.

43. As a result of the acts and conduct complained of herein, Ms. Best has suffered emotional pain, suffering, inconvenience, non-pecuniary losses, as well as pecuniary losses.

44. In sum, Plaintiffs seeks damages for past and future lost wages, emotional distress, attorneys' fees, and punitive damages.

45. As set forth above, Plaintiff was subjected to adverse employment actions, including termination, because she complained of compliance violations constituting Medicare and Medicaid fraud.

46. Defendants had no legitimate, non-retaliatory reason for terminating Plaintiff's employment, their stated explanation for Plaintiff's termination was a pretext for retaliation, and the retaliatory actions taken against Plaintiff were malicious and/or or in reckless disregard of her civil rights. At all times relevant to this action, Plaintiff's job performance was exemplary, and she would not have been targeted for termination but for her complaints concerning compliance violations constituting Medicare and Medicaid fraud.

47. The plaintiff engaged in a protected activity because she investigated and reported facts relating to her employer's submission of false claims to the government that inflate Medicare reimbursements to Defendants.

**COUNT ONE**
**(Retaliation under Federal False Claims Act)**

### 31 U.S.C. § 3730(h)

48. In pertinent part, section 3730(h) provides: "[a]ny employee who is discharged [or] demoted . . . because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole."

49. Plaintiff reasonably believed that by virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to officers, employees or agents of the United States government for payment or approval.

50. For the first requirement of a retaliation case--engaging in protected activity--it is sufficient that a plaintiff be investigating matters that reasonably could lead to a viable False Claims Act (FCA) case.

51. After Plaintiff made numerous attempts to bring her employers into compliance with the FCA, Defendants wrongfully and abruptly terminated her. Defendants' blatant retaliation against Plaintiff for her engagement in the protected activity of investigating fraud against the Government violated 31 U.S.C. § 3730(h).

52. Plaintiff is entitled to relief including reinstatement with the same seniority status she would have had but for the retaliation, two times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the retaliation, including litigation costs and reasonable attorneys' fees.

WHEREFORE, Plaintiff demands and prays that judgment be entered against Defendants under

the Federal False Claims Act as follows:

    a. That at this Court enter judgment against Defendant in an amount equal to three times the amount of damages the United States has sustained because of Defendant's actions, plus a civil penalty of not less than $5,500 and not more than $11,000 for each violation of 31 USC 3729;

    b. That the Plaintiff be awarded the maximum amount allowed pursuant to 31 USC 3730(d);

    c. That the Plaintiff be awarded all costs of this action, including attorneys' fees and expenses;

    d. An award to Plaintiff of compensatory damages in an amount to be determined at trial for all damages including but not limited to economic damages for lost past back pay and future front pay wages and attendant benefits;

    e. An award to Plaintiff of compensatory damages in an amount to be determined at trial for all damages including but not limited to past and future non-economic damages for humiliation, pain and suffering and emotional distress sustained;

    f. That the Plaintiff recovers such other relief as the Court deems just and proper.

## COUNT TWO
**(Retaliation - New York False Claims Act)**
N.Y. Finance Law§ 191

53. Plaintiff repeats and realleges each and every allegation contained above as though fully set forth herein.

54. This is a claim for treble damages and penalties under the New York False Claims Act, N.Y. Finance Law §§ 1 8 7 et seq., as amended.

55. By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to New York for payment or approval, within the meaning of N.Y. Finance Law § 1 89(1)(a).

56. New York, unaware of the falsity of the claims made or caused to be made by the Defendants, paid and continues to pay the claims that would not be paid but for Defendants' unlawful conduct.

57. By reason of the Defendants' acts, New York has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

58. Additionally, New York is entitled to the maximum penalty of $ 1 2,000 for each and every false and fraudulent claim made and caused to be made by Defendants arising from their unlawful conduct as described herein.

## Jury Demand

Plaintiff requests a jury trial on all issues to be tried.

Dated:
September 19, 2022

Joshua Gittleman, Esq.
DeTOFFOL & GITTLEMAN, Attorneys at Law
125 Maiden Lane – Suite 5C
New York, New York 10038
Tel. (212) 962-2220
Attorneys for Plaintiff